**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **STEFANO MARKELL PARKER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-5122** |
| **CHET MORRISON CONTRACTORS, LLC, ET AL.** | **SECTION "O"** |

## ORDER AND REASONS

Before the Court are six motions filed by *pro se* Plaintiff Stefano Markell Parker: (1) a motion[1] to appoint counsel; (2) a second motion[2] to appoint counsel; (3) a motion[3] for summary judgment; (4) a supplemental motion[4] for summary judgment; (5) a motion[5] to stay; and (6) a motion[6] for protection. Liberally construing Parker's *pro se* motions, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), the Court concludes that Parker has not carried his burden to show exceptional circumstances meriting appointment of counsel. Nor has Parker carried his burden to show that he is entitled to summary judgment against Defendant Chet Morrison Contractors, LLC or Defendant Morrison Energy. Parker's "motion to stay" is, in fact, an opposition to Defendants' motion to dismiss—not a request to stay this case. And finally, Parker's "motion for protection" seeks relief the Court may not properly grant. Accordingly, for these reasons and those that follow, Parker's motions[7] are **DENIED**.

---

[1] ECF No. 14.
[2] ECF No. 20.
[3] ECF No. 22.
[4] ECF No. 24.
[5] ECF No. 31.
[6] ECF No. 33.
[7] ECF Nos. 14, 20, 22, 24, 31, 33.

## I.   BACKGROUND

Liberally construed, *see id.,* Parker's *pro se* complaints assert seven claims arising from his employment as an offshore diver for Defendant Chet Morrison Contractors, LLC, a construction company, from 2012 through 2015.[8]

Parker is an inmate housed in North Kern State Prison in Delano, California.[9] He alleges that "around February 2013," his then-employer, Defendant Chet Morrison Contractors,  "called [him] for an emergency job to fix a gas leak" on a pipeline in the Gulf of Mexico.[10] He alleges that he "shipped off" from a dock in Houma, Louisiana, aboard the *Kelly Morrison*.[11] He alleges that, after the ship reached the location of the gas leak, Superintendent John Phillips of Chet Morrison Contractors directed Parker and two other divers to board an oil rig connected to the pipeline so that they could "manually cut off pressure" and stop the leak.[12] Parker alleges that he and the other divers boarded the oil rig and cut off the pressure.[13]

"By the time" Parker and the two other divers completed their task, however, the weather had worsened, and "the ship could not safely pick [them] up."[14] According to Parker, the ship "could not get close enough to the oil rig" for Parker and the other two divers "to safely jump without damaging the oil rig or the ship."[15] Parker alleges that, "[a]fter about 3 failed attempts," the *Kelly Morrison* still "could not hold her

---

[8] *See generally* ECF No. 1 (original complaint); ECF No. 8 (original complaint).
[9] *See, e.g.*, ECF No. 1 at 1.
[10] ECF No. 1 at 9; *see also* ECF No. 8 at 1.
[11] ECF No. 1 at 9; *see also* ECF No. 8 at 2.
[12] ECF No. 1 at 10; *see also* ECF No. 8 at 2.
[13] ECF No. 1 at 10; *see also* ECF No. 8 at 2.
[14] ECF No. 1 at 10; *see also* ECF No. 8 at 2.
[15] ECF No. 8 at 2.

position in the rough weather to safely do a person[n]el transfer."[16] So, Superintendent Phillips allegedly decided that Parker and the other two divers "would have to swim" from the oil rig back to the ship.[17] Parker alleges that he "jumped in the ocean" on the "command" of Superintendent Phillips, but that he "got swept away by the strong current" and "almost drowned."[18] Parker alleges that the "arm pit straps on [his] life jacket" were "missing," and, as a result, he "was lost at sea swimming in the ocean for 45 minutes with one arm holding [his] life jacket down around [his] chest and the other arm swimming trying to stay alive."[19] Parker alleges that Chet Morrison Contractors "had out of service life jackets readily available for use" on the ship; that "the life jackets should have been checked" before the ship left the docket"; and that Chet Morrison Contractors "neglected [his] safety."[20]

According to Parker, "[a]fter 45 minutes of swimming in the ocean," the *Kelly Morrison* "finally got close enough for the crew to toss [Parker] a life ring."[21] Eventually, Parker was thrown a life ring and "pulled to the ship."[22] Parker alleges that, once he "made it back to the ship," he was "exhausted and traumatized."[23] Parker alleges that he "was never seen by a medic," "[e]ven though" he had "almost drowned and could not take 10 steps without feeling like [he] was going to collapse on the back deck of the ship."[24] Parker alleges that he "should have been exam[in]ed

---

[16] *Id.*
[17] ECF No. 1 at 10; *see also* ECF No. 8 at 2–3.
[18] ECF No. 1 at 10; *see also* ECF No. 8 at 3–4.
[19] ECF No. 1 at 10; *see also* ECF No. 8 at 4.
[20] ECF No. 1 at 10.
[21] ECF No. 8 at 4.
[22] *Id.* at 5.
[23] ECF No. 1 at 12.
[24] ECF No. 1 at 12; *see also* ECF No. 8 at 5.

immediately" for his "near drowning incident."[25] Parker alleges he "was diagnosed with PTSD" in 2016 "due to the trauma [he] experienced in this near death event."[26]

According to Parker, the other two divers aboard the oil rig were not required to jump into the ocean: They were instead "picked up from the oil rig by helicopter and returned to the ship."[27] Parker alleges that he was not "given th[e] option" to be picked up by a helicopter, and that if he had "been given that option," he "would have never jumped into the ocean."[28]

About a week-and-a-half after that February 2013 "near drowning incident," Parker allegedly learned from a "coworker" that Chet Morrison Contractors had "called . . . a safety meeting" that "ended with a cookout."[29] Parker alleges that he also learned that he "was one of the main topics of the meeting."[30] But Parker alleges that he was not invited to the meeting, and, as a result, he "felt . . . ostracized."[31]

According to Parker, after the "near drowning incident," in 2014, he became credentialed as "an Association of Dive Contractors [ADC] recognized Surface Supplied Air Diving Supervisor."[32] But Parker alleges that he was "still getting paid and employed as a diver tender[,]" which Parker describes as "subordinate" to the position he should have held based on his certifications.[33] Parker alleges that "[e]veryone else at Chet Morrison Contractors" with his certifications would be paid

---

[25] ECF No. 1 at 12.; *see also* ECF No. 8 at 5.
[26] ECF No. 8 at 5.
[27] ECF No. 1 at 11.
[28] *Id.*
[29] ECF No. 1 at 12; *see also* ECF No. 8 at 5.
[30] ECF No. 1 at 12; *see also* ECF No. 8 at 5.
[31] ECF No. 1 at 13; *see also* ECF No. 8 at 5.
[32] ECF No. 1 at 13.
[33] *Id.*

"as either a Surface Supplied Air Diver or as a Surface Supplied Air Diver Supervisor," but that he "was not paid or employed" similarly.[34] In his only explicit mention of Defendant Morrison Energy, Parker alleges that "[e]veryone at" Chet Morrison Contractors "that has been sponsored by Morrison Energy as an ADC Surface Supplied Air Diver Supervisor either works as a Surface Supplied Air Diver Supervisor or as a Surface Supplied Air Diver."[35] Parker, a Black male,[36] alleges that "race was a reason for [his] not moving up in the ranks and being paid properly."[37] Parker alleges that Chet Morrison Contractors gave "position raises and the pay that came with it" to a white diver who was less credentialed than Parker and who had the "same amount of dives."[38] And Parker alleges that "[d]iscrimination at Chet Morrison Contractors hindered the trajectory of [his] career."[39]

Parker also alleges that he experienced a "very hostile work environment" while employed by Chet Morrison Contractors.[40] In support, Parker alleges that "many offshore employees" wore "confederate flag stickers on the[i]r hard hats"; that one white diver once dared another white diver to call Parker a racial slur just to "see how [Parker] would react"; and that "a white male crane operator" once refused to accept Parker's "verbal command and hand signals because of [Parker's] race."

---

[34] *Id.*
[35] *Id.* at 6.
[36] *See* ECF No. 8-1 at 1–2.
[37] ECF No. 1 at 14.
[38] *Id.*
[39] *Id.*
[40] *Id.*

Ultimately, Parker alleges that Chet Morrison Contractors "discriminated against [him] . . . while [he] was employed there from the years 2012 to 2015."[41]

Based on these allegations, Parker brought a Section 1983 suit against Chet Morrison Contractors and Morrison Energy in this Court in September 2023.[42] As noted, the only allegation related to Morrison Energy, specifically, is that Morrison Energy "sponsored" unidentified Chet Morrison Contractors employees to become "ADC Surface Supplied Air Diver Supervisor[s]."[43] Parker's complaints do not otherwise reference Morrison Energy or connect Morrison Energy to the alleged facts giving rise to Parker's claims. Liberally construing Parker's *pro se* complaints, *see Erickson*, 551 U.S. at 94, the Court finds that Parker asserts these seven claims:

1. **Negligence.**  Parker asserts a negligence claim against Chet Morrison Contractors based on Chet Morrison Contractors' alleged failure to check "all the life jackets" before the *Kelly Morrison* left the dock in February 2013.[44] Parker alleges that Chet Morrison Contractors "neglected [his] safety" by "ha[ving] out of service life jackets readily available for use on board the Deep Sea Vessel Kelly Morrison."[45]

2. **Equal Protection.** Parker asserts a Section 1983 equal-protection claim against Chet Morrison Contractors based on Chet Morrison Contractors' alleged failure to "provide [him] with the equal protection

---

[41] *Id*. at 15.
[42] *See generally* ECF No. 1.
[43] *Id*. at 6.
[44] *Id*. at 10.
[45] *Id*.

[Chet Morrison Contractors] gave the other two diver tenders who were on the" oil rig with Parker during the February 2013 incident.[46] Specifically, Parker alleges that Chet Morrison Contractors denied him equal protection when it offered the other two divers the option of being picked up from the oil rig by a helicopter, but did not offer him the same "helicopter option."[47]

3.   **Right to Medical Care.** Parker asserts a Section 1983 claim for a violation of his "[r]ight to medical care" against Chet Morrison Contractors based on Chet Morrison Contractors' alleged failure to ensure that he was "exam[in]ed immediately" after the "near drowning incident" he alleges he experienced in February 2013.[48]

4.   **Cruel and Unusual Punishment.** Parker asserts a Section 1983 claim against Chet Morrison Contractors for violation of his "[f]reedom from cruel and unusual punishment" based on Chet Morrison Contractors' alleged failure to invite him to the safety meeting and cookout that occurred about a week-and-a-half after the February 2013 incident.[49]

5.   **Race Discrimination.** Parker asserts a claim for "[d]iscrimination," presumably under Title VII of the Civil Rights Act of 1964, against Chet Morrison Contractors based on (a) Chet Morrison Contractors' failure to

---

[46] *Id.* at 11.
[47] *Id.*
[48] *Id.* at 11–12.
[49] *Id.* at 12.

pay and employ him at a level commensurate with his dive credentials, and (b) the hostile work environment he alleges that he experienced "while [he] was employed there from the years 2012 to 2015."[50]

6. **Jones Act Negligence.** Parker asserts a Jones Act negligence claim against Chet Morrison Contractors based on the same alleged facts that form the basis of his ordinary negligence claim.[51]

7. **Unseaworthiness.** Parker asserts a Jones Act unseaworthiness claim against Chet Morrison Contractors based on his allegation that the *Kelly Morrison* "attempted 3 times and failed all 3 times to safely get close enough to the . . . oil rig to do a person[n]el transfer."[52]

Now, Parker moves (1) for appointment of counsel;[53] (2) for summary judgment;[54] (3) for a "stay" of the Court's order on Defendants' motion to dismiss;[55] and (4) for "protection" from other inmates at North Kern State Prison.[56]

---

[50] *Id.* at 13–15.
[51] ECF No. 8 at 1–5.
[52] *Id.* at 6.
[53] ECF No. 14 & ECF No. 20.
[54] ECF No. 22 & ECF No. 24.
[55] ECF No. 31.
[56] ECF No. 33.

## II.    ANALYSIS

### A.    Motions for Appointment of Counsel

Parker moves the Court to appoint him counsel.[57] Parker contends that he needs appointed counsel to "contact witnesses and to get addresses for subpoenas";[58] "obtain [his] dive credentials and medical records";[59] obtain his workers' compensation claim;[60] and obtain expert testimony.[61] Parker emphasizes "the difficulty of retrieving the evidence [he] wish[es] to present" given his incarceration.[62]

"There is no right to appointment of counsel in civil cases, but a district court may appoint counsel if doing so 'would aid in the efficient and equitable disposition of the case.'" *Delaughter v. Woodall*, 909 F.3d 130, 140 (5th Cir. 2018) (quoting *Jackson v. Dall. Police Dep't*, 811 F.2d 260, 262 (5th Cir. 1986)). "Generally, appointment of counsel should be reserved for cases presenting 'exceptional circumstances.'" *Id.* (quoting *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982)).

The Fifth Circuit has "declined to articulate a 'comprehensive definition of exceptional circumstances,'" but the Fifth Circuit has "supplied factors that a district court should consider in determining whether exceptional circumstances warrant the appointment of counsel . . . ." *Naranjo v. Thompson*, 809 F.3d 793, 799 (5th Cir. 2015) (quoting *Ulmer*, 691 F.2d at 213). Those factors include "(1) the type and complexity of the case; (2) whether the indigent is capable of adequately presenting his case; (3)

---

[57] ECF No. 14 & ECF No. 20.
[58] ECF No. 14 at 1; *see also* ECF No. 20 at 2.
[59] ECF No. 14 at 1–2.
[60] *Id.* at 2.
[61] *Id.*
[62] ECF No. 20 at 2.

whether the indigent is in a position to investigate adequately the case; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination." *Ulmer*, 691 F.2d at 213 (internal citations omitted). "District courts may also consider the extent of a plaintiff's attempts to secure private counsel independently." *Naranjo*, 809 F.3d at 799 (citing *Jackson v. Cain,* 864 F.2d 1235, 1242 (5th Cir. 1989)).

Applying each of those factors here, on balance, the Court concludes that Parker has not shown exceptional circumstances meriting appointment of counsel. The first factor disfavors appointment of counsel because Parker asserts straightforward claims under Section 1983, Title VII, and the Jones Act arising from his employment as a diver for Chet Morrison Contractors from 2012–2015. Parker has identified "no unusual evidentiary issues" or complex legal questions warranting the appointment of counsel. *See Dung Ngoc Huynh v. Baze*, 317 F. App'x 397, 399 (5th Cir. 2009) (per curiam). The second factor similarly disfavors appointment of counsel because Parker has shown himself capable of adequately presenting his case: He has engaged in robust motion practice; he is generally able to articulate his claims so that the Court can understand them; and many of his submissions even include citations to authority.[63] The third factor disfavors appointment of counsel because Parker has not shown that he is *not* "in a position to investigate adequately the case." *Ulmer*, 691 F.2d at 213 (internal citations omitted). "Presumably, [Parker] has access to the [prison] law library[,]" and Parker's "written submissions reflect at least an average

---

[63] *See, e.g.*, ECF No. 14 & ECF No. 20.

understanding of [C]ourt rules and procedures." *Coleman v. Dallas Cnty. Sheriff's Dep't,* No. 3-12-CV-3145-P, 2012 WL 12887305, at *1 (N.D. Tex. Aug. 30, 2012). Fourth, there is no indication in the motions or otherwise that "the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination." *Ulmer*, 691 F.2d at 213 (citations omitted).

In sum, no relevant factor favors a finding of extraordinary circumstances meriting the appointment of counsel. So, Parker has necessarily failed to carry his burden to show exceptional circumstances meriting the appointment of counsel. The Court therefore denies Parker's motions[64] for appointment of counsel.

### B.   Motions for Summary Judgment

Next, Parker moves for summary judgment against Defendants Chet Morrison Contractors and Morrison Energy.[65] Liberally construing Parker's *pro se* motions, *see Erickson*, 551 U.S. at 94, the Court understands that Parker seeks summary judgment on the ground that Chet Morrison Contractors and Morrison Energy did not file an answer to Parker's complaints within 60 days of service.[66]

Summary judgment is appropriate "if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 926 (5th Cir. 2021) (quoting *Anderson v.*

---

[64] ECF No. 14 & ECF No. 20.
[65] ECF No. 22 & ECF No. 24.
[66] ECF No. 22 at 2–3; ECF No. 24 at 1–2.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "The movant has the initial burden of demonstrating the absence of a material fact issue." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021) (internal citation omitted). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Lozano v. Collier*, 98 F.4th 614, 620 (5th Cir. 2024) (internal quotation marks and citation omitted).

Parker has not met his initial burden to show the absence of a genuine dispute of material fact as to any of his claims or Defendants' defenses. To be sure, Parker points to Defendants' failure to file an answer within 60 days of service.[67] But Defendants were not required to file an answer within 60 days of service: Defendants' pending, timely filed Rule 12(b)(6) motion to dismiss[68] suspends Defendants' obligation to answer Parker's complaints until 14 days after "notice of the [C]ourt's action" on the motion. *See* FED. R. CIV. P. 12(a)(4)(A). Accordingly, because Parker fails to meet his initial burden, his motions[69] for summary judgment "must be denied." *Lozano,* 98 F.4th at 620 (internal quotation marks and citation omitted).

---

[67] *Id.*

[68] *See* ECF No. 19 (motion to dismiss filed on November 9, 2023); ECF No. 12 & ECF No. 18 (together, extending Defendants' responsive-pleading deadline to November 9, 2023).

[69] ECF No. 22 & ECF No. 24.

### C.    "Motion for Stay"

Parker filed a document he titled a "motion for stay."[70] In it, he explains that he "heavily oppose[s]" the pending Rule 12(b)(6) motion, and he asks the Court to "stay . . . its order on the motion."[71] Despite this document's title, it is not properly characterized as a "motion for stay" or a "motion" at all. Liberally construed, *see Erickson*, 551 U.S. at 94, Parker's "motion for stay" is instead Parker's opposition to the pending Rule 12(b)(6) motion. Indeed, the "motion for stay" references arguments raised in the pending Rule 12(b)(6) motion,[72] and urges the Court not to dismiss any of Parker's claims.[73] Accordingly, because the Court liberally construes the "motion for stay" as Parker's response to the pending Rule 12(b)(6) motion rather than as a request to stay this litigation, Parker's "motion for stay" is denied. The Court will consider Parker's "motion for stay" in its analysis of Defendants' Rule 12(b)(6) motion.

### D.    "Motion for Protection"

Parker next moves "for protection."[74] He explains that he "need[s] to be placed in protective custody" because he "was attacked and beaten" by other inmates at North Kern State Prison in Delano, California.[75] The Court is constrained to deny Parker's motion because the Court lacks authority to order officials at the North Kern State Prison to place Parker in protective custody. "The federal courts do not sit to

---

[70] ECF No. 31.

[71] *Id.* at 1 (internal quotation marks omitted).

[72] *See, e.g.*, *id.* at 2 (referencing the prescription argument raised in the Rule 12(b)(6) motion); *id.* at 4 (referencing the state-actor argument raised in the Rule 12(b)(6) motion).

[73] *Id.* at 7.

[74] ECF No. 33.

[75] *Id.* at 1.

supervise state prisons." *Meachum v. Fano*, 427 U.S. 215, 229 (1976). "Classification of inmates is a matter of prison administration and management with which federal courts are reluctant to interfere except in extreme circumstances." *Young v. Wainwright*, 449 F.2d 338, 339 (5th Cir. 1971) (per curiam) (citations omitted). Even if Parker had shown "extreme circumstances," the Court still could not order North Kern State Prison officials to place Parker in protective custody because Parker has not sued any North Kern State Prison official empowered to place Parker in protective custody, and Parker's suit does not otherwise challenge the constitutionality of the conditions of his confinement at the North Kern State Prison. *Id.*

## III.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Parker's motions[76] are **DENIED**.

New Orleans, Louisiana, this 27th day of August, 2024.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[76] ECF Nos. 14, 20, 22, 24, 31, 33.

14