## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**STEFANO MARKELL PARKER**                    **CIVIL ACTION**

**VERSUS**                                                      **NO. 23-5122**

**CHET MORRISON CONTRACTORS, LLC, ET AL.**        **SECTION "O"**

## ORDER AND REASONS

Before the Court in this 42 U.S.C. § 1983 case is the Federal Rule of Civil Procedure 12(b)(6) motion[1] of Defendants Chet Morrison Contractors, LLC and Morrison Energy to dismiss *pro se* Plaintiff Stefano Markell Parker's claims. Parker's claims stem from a "near drowning incident"[2] that occurred "around February 2013"[3] when Parker was working as a diver for Chet Morrison Contractors.[4] Defendants contend that all of Parker's claims are time-barred; that Parker fails to state any Section 1983 claims against them because they are private actors not alleged to have acted under color of state law; and that Parker does not allege any wrongdoing by Morrison Energy.[5] Also before the Court is Parker's "omnibus motion to add counts"[6] to his original[7] and supplemental[8] complaints. Parker asks the Court "to accept" two more counts that describe alleged "unlawful acts" occurring in 2013 and 2015.[9]

---

[1] ECF No. 19.
[2] ECF No. 1 at 12.
[3] *Id.* at 9.
[4] *Id.*
[5] ECF No. 19 at 1.
[6] ECF No. 32.
[7] ECF No. 1.
[8] ECF No. 8.
[9] ECF No. 32 at 1.

Liberally construing Parker's *pro se* complaints, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and holding them to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), the Court concludes that Parker fails to state any claims against any Defendant. That is because (1) all of Parker's claims are time-barred on the face of his complaints, and no tolling doctrine applies; (2) Defendants—private actors not alleged to have acted under color of state law—are not liable under Section 1983; and (3) no plausible claims are pleaded against Morrison Energy. Parker has already amended his complaint, and there is no indication in Parker's complaints or in his briefing that he *could* plead facts that would allow the Court to reasonably infer the liability of any Defendant on any theory he has raised. Further amendment would be futile: Parker "has already pleaded his best case." *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (per curiam) (internal quotation marks and citation omitted). Accordingly, for these reasons and those that follow, Defendants' Rule 12(b)(6) motion to dismiss is **GRANTED** and Parker's motion to add counts is **DENIED**.

## I.    BACKGROUND

Liberally construed, *see Erickson,* 551 U.S. at 94, Parker's *pro se* complaints assert seven claims arising from his employment as an offshore diver for Defendant Chet Morrison Contractors, LLC, a construction company, from 2012 through 2015.[10]

---

[10] *See generally* ECF No. 1 (original complaint); ECF No. 8 (supplemental complaint).

Parker is an inmate at North Kern State Prison in Delano, California.[11] He alleges that "around February 2013," his then-employer, Defendant Chet Morrison Contractors, "called [him] for an emergency job to fix a gas leak" on a pipeline in the Gulf of Mexico.[12] He alleges that he "shipped off" from a dock in Houma, Louisiana, aboard the *Kelly Morrison*.[13] He alleges that, after the *Kelly Morrison* reached the location of the gas leak, Superintendent John Phillips of Chet Morrison Contractors directed Parker and two other divers to board an oil rig connected to the pipeline so that they could "manually cut off pressure" and stop the leak.[14] Parker alleges that he and the other two divers boarded the oil rig and cut off the pressure.[15]

"By the time" Parker and the two other divers completed their task, however, the weather had worsened, and "the ship could not safely pick [them] up."[16] According to Parker, the ship "could not get close enough to the oil rig" for Parker and the other two divers "to safely jump without damaging the oil rig or the ship."[17] Parker alleges that, "[a]fter about 3 failed attempts," the *Kelly Morrison* still "could not hold her position in the rough weather to safely do a person[n]el transfer."[18] So, Superintendent Phillips allegedly decided that Parker and the other two divers "would have to swim" from the oil rig back to the ship.[19] Parker alleges that he "jumped in the ocean" on the "command" of Superintendent Phillips, but that he "got

---

[11] *See, e.g.*, ECF No. 1 at 1.
[12] ECF No. 1 at 9; *see also* ECF No. 8 at 1.
[13] ECF No. 1 at 9; *see also* ECF No. 8 at 2.
[14] ECF No. 1 at 10; *see also* ECF No. 8 at 2.
[15] ECF No. 1 at 10; *see also* ECF No. 8 at 2.
[16] ECF No. 1 at 10; *see also* ECF No. 8 at 2.
[17] ECF No. 8 at 2.
[18] *Id.*
[19] ECF No. 1 at 10; *see also* ECF No. 8 at 2–3.

swept away by the strong current" and "almost drowned."[20] Parker alleges that the "arm pit straps on [his] life jacket" were "missing," and, as a result, he "was lost at sea swimming in the ocean for 45 minutes with one arm holding [his] life jacket down around [his] chest and the other arm swimming trying to stay alive."[21] Parker alleges that Chet Morrison Contractors "had out of service life jackets readily available for use" on the ship; that "the life jackets should have been checked" before the ship left the docket"; and that Chet Morrison Contractors "neglected [his] safety."[22]

According to Parker, "[a]fter 45 minutes of swimming in the ocean," the *Kelly Morrison* "finally got close enough for the crew to toss [Parker] a life ring."[23] Eventually, Parker was thrown a life ring and "pulled to the ship."[24] Parker alleges that, once he "made it back to the ship," he was "exhausted and traumatized."[25] Parker alleges that he "was never seen by a medic," "[e]ven though" he had "almost drowned and could not take 10 steps without feeling like [he] was going to collapse on the back deck of the ship."[26] Parker alleges that he "should have been exam[in]ed immediately" for his "near drowning incident."[27] Parker alleges he "was diagnosed with PTSD" in 2016 "due to the trauma [he] experienced in this near death event."[28]

---

[20] ECF No. 1 at 10; *see also* ECF No. 8 at 3–4.
[21] ECF No. 1 at 10; *see also* ECF No. 8 at 4.
[22] ECF No. 1 at 10.
[23] ECF No. 8 at 4.
[24] *Id.* at 5.
[25] ECF No. 1 at 12.
[26] ECF No. 1 at 12; *see also* ECF No. 8 at 5.
[27] ECF No. 1 at 12.; *see also* ECF No. 8 at 5.
[28] ECF No. 8 at 5.

According to Parker, the other two divers aboard the oil rig were not required to jump into the ocean and swim to the *Kelly Morrison*.[29] Instead, those divers were "picked up from the oil rig by helicopter and returned to the ship."[30] Parker alleges that he was not "given th[e] option" to be picked up by a helicopter, and that if he had "been given that option," he "would have never jumped into the ocean."[31]

About a week-and-a-half after that February 2013 "near drowning incident," Parker allegedly learned from a "coworker" that Chet Morrison Contractors had "called . . . a safety meeting" that "ended with a cookout."[32] Parker alleges that he also learned that he "was one of the main topics of the meeting."[33] But Parker alleges that he was not invited to the meeting, and, as a result, he "felt . . . ostracized."[34]

According to Parker, after the "near drowning incident," in 2014, he became credentialed as "an Association of Dive Contractors [ADC] recognized Surface Supplied Air Diving Supervisor."[35] But Parker alleges that he was "still getting paid and employed as a diver tender[,]" which Parker describes as "subordinate" to the position he should have held based on his certifications.[36] Parker alleges that "[e]veryone else at Chet Morrison Contractors" with his certifications would be paid "as either a Surface Supplied Air Diver or as a Surface Supplied Air Diver

---

[29] ECF No. 1 at 11.
[30] *Id.*
[31] *Id.*
[32] ECF No. 1 at 12; *see also* ECF No. 8 at 5.
[33] ECF No. 1 at 12; *see also* ECF No. 8 at 5.
[34] ECF No. 1 at 13; *see also* ECF No. 8 at 5.
[35] ECF No. 1 at 13.
[36] *Id.*

Supervisor," but that he "was not paid or employed" similarly.[37] In his only explicit mention of Defendant Morrison Energy, Parker alleges that "[e]veryone at" Chet Morrison Contractors "that has been sponsored by Morrison Energy as an ADC Surface Supplied Air Diver Supervisor either works as a Surface Supplied Air Diver Supervisor or as a Surface Supplied Air Diver."[38] Parker, a Black male,[39] alleges that "race was a reason for [his] not moving up in the ranks and being paid properly."[40] Parker alleges that Chet Morrison Contractors gave "position raises and the pay that came with it" to a white diver who was less credentialed than Parker and who had the "same amount of dives."[41] And Parker alleges that "[d]iscrimination at Chet Morrison Contractors hindered the trajectory of [his] career."[42]

Parker also alleges that he experienced a "very hostile work environment" while employed by Chet Morrison Contractors.[43] In support, Parker alleges that "many offshore employees" wore "confederate flag stickers on the[i]r hard hats"; that one white diver once dared another white diver to call Parker a racial slur just to "see how [Parker] would react"; and that "a white male crane operator" once refused to accept Parker's "verbal command and hand signals because of [Parker's] race." Ultimately, Parker alleges that Chet Morrison Contractors "discriminated against [him] . . . while [he] was employed there from the years 2012 to 2015."[44]

---

[37] *Id.*
[38] *Id.* at 6.
[39] *See* ECF No. 8-1 at 1–2.
[40] ECF No. 1 at 14.
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.* at 15.

Based on these allegations, Parker brought a Section 1983 suit against Chet Morrison Contractors and Morrison Energy in this Court in September 2023.[45] The only allegation related to Morrison Energy, specifically, is that Morrison Energy "sponsored" unidentified Chet Morrison Contractors employees to become "ADC Surface Supplied Air Diver Supervisor[s]."[46] Parker's complaints do not otherwise reference Morrison Energy or connect Morrison Energy to the alleged facts giving rise to his claims. Liberally construing Parker's *pro se* complaints, *see Erickson*, 551 U.S. at 94, the Court finds that Parker asserts these seven claims:

1. **Negligence.** Parker asserts a negligence claim against Chet Morrison Contractors based on Chet Morrison Contractors' alleged failure to check "all the life jackets" before the *Kelly Morrison* left the dock in February 2013.[47] Parker alleges that Chet Morrison Contractors "neglected [his] safety" by "ha[ving] out of service life jackets readily available for use on board the Deep Sea Vessel *Kelly Morrison*."[48]

2. **Equal Protection.** Parker asserts a Section 1983 equal-protection claim against Chet Morrison Contractors based on Chet Morrison Contractors' alleged failure to "provide [him] with the equal protection [Chet Morrison Contractors] gave the other two diver tenders who were on the" oil rig with Parker during the February 2013 incident.[49]

---

[45] *See generally* ECF No. 1.
[46] *Id.* at 6.
[47] *Id.* at 10.
[48] *Id.*
[49] *Id.* at 11.

Specifically, Parker alleges that Chet Morrison Contractors denied him equal protection when it offered the other two divers the option of being picked up from the oil rig by a helicopter, but did not offer him the same "helicopter option."[50]

3. **Right to Medical Care.** Parker asserts a Section 1983 claim for a violation of his "[r]ight to medical care" against Chet Morrison Contractors based on Chet Morrison Contractors' alleged failure to ensure that he was "exam[in]ed immediately" after the "near drowning incident" he alleges he experienced in February 2013.[51]

4. **Cruel and Unusual Punishment.** Parker asserts a Section 1983 claim against Chet Morrison Contractors for violation of his "[f]reedom from cruel and unusual punishment" based on Chet Morrison Contractors' alleged failure to invite him to a safety meeting and cookout that he learned about a week-and-a-half after the February 2013 incident.[52]

5. **Race Discrimination.** Parker asserts a claim for "[d]iscrimination," presumably under Title VII of the Civil Rights Act of 1964, against Chet Morrison Contractors based on (a) Chet Morrison Contractors' failure to pay and employ him at a level commensurate with his dive credentials,

---

[50] *Id.*
[51] *Id.* at 11–12.
[52] *Id.* at 12.

and (b) the hostile work environment he alleges that he experienced "while [he] was employed there from the years 2012 to 2015."[53]

6. **Jones Act Negligence.** Parker asserts a Jones Act negligence claim against Chet Morrison Contractors based on the same alleged facts underlying his ordinary negligence claim.[54]

7. **Unseaworthiness.** Parker asserts an unseaworthiness claim against Chet Morrison Contractors based on his allegation that the *Kelly Morrison* "attempted 3 times and failed all 3 times to safely get close enough to the . . . oil rig to do a person[n]el transfer."[55]

Now, Defendants move the Court to dismiss Parker's complaints under Rule 12(b)(6) for failure to state a claim.[56] Parker opposes[57] and moves the Court "to accept" two more counts that describe alleged "unlawful acts" occurring in 2013 and 2015.[58]

## II. LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint that does not satisfy Rule 8(a)(2)'s pleading standard fails to state a claim upon which relief can be granted. *See generally* FED. R. CIV. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than

---

[53] *Id.* at 13–15.
[54] ECF No. 8 at 1–5.
[55] *Id.* at 6.
[56] ECF No. 19.
[57] ECF No. 31.
[58] ECF No. 32 at 1–2.

an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "An otherwise plausible claim may also be doomed by a procedural impediment, like a statute of limitations or similar bar." *Stringer v. Town of Jonesboro*, 986 F.3d 502, 506 (5th Cir. 2021) (citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 364 (5th Cir. 2003)).

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although '[courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

"The filings of a *pro se* litigant are to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Tucker v. Gaddis*, 40 F.4th 289, 292 (5th Cir.

2022) (internal citation and quotation marks omitted). But "*pro se* plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

## III.   ANALYSIS

### A.   Defendants' Rule 12(b)(6) Motion

Defendants contend that the Court should dismiss Parker's claims under Rule 12(b)(6) for three principal reasons.[59] First, Defendants contend that Parker's claims are untimely because they accrued in February 2013, or, at the latest, in 2016, and yet Parker waited until September 2023 to sue.[60] Second, Defendants contend that Parker fails to state any Section 1983 claims against them because they are private actors not alleged to have acted under color of state law.[61] Finally, Defendants contend that Parker fails to state any plausible claims against Morrison Energy because Parker's liberally construed complaints do not allege that Morrison Energy, specifically, engaged in any wrongdoing.[62] The Court takes each argument in turn.

#### 1.   Timeliness

First, Defendants contend that the Court should dismiss all of Parker's claims with prejudice under Rule 12(b)(6) because it is clear from the face of Parker's liberally construed complaints that all of his claims are time-barred.[63] "Rule 12(b)(6) dismissal under a statute of limitation is proper only when the complaint makes plain

---

[59] ECF No. 19 at 1; *see also* ECF No. 19-1 at 1–12.
[60] ECF No. 19-1 at 4–8.
[61] *Id.* at 9–11.
[62] *Id.* at 11.
[63] *Id.* at 4–8.

that the claim is time-barred and raises no basis for tolling." *Johnson v. Harris Cnty.*, 83 F.4th 941, 945 (5th Cir. 2023) (internal citations and quotation marks omitted). The Court considers the timeliness of each of Parker's liberally construed claims.

### a. Negligence Claim (Count 1)[64]

Parker's liberally construed complaints confirm that his negligence claim is untimely, and his complaints raise no basis for tolling. Parker's claim for "simple negligence" is "a delictual offense"—*i.e.*, a tort—under Louisiana law.[65] *See Babin v. Quality Energy Servs., Inc.*, 877 F.3d 621, 626 (5th Cir. 2017) (citing *Young v. Adolph*, 2002-67, p. 10 (La. App. 5 Cir. 5/15/02); 821 So. 2d 101, 106). The prescriptive period for delictual claims like negligence was one year under Louisiana Civil Code Article 3492. *See* LA. CIV. CODE ANN. art. 3492, *repealed by* TORT ACTIONS, 2024 La. Sess. Law Serv. Act 423 (H.B. 315). But Article 3492 was repealed and replaced by Article 3493.1 effective July 1, 2024. *See id.* The new Article 3493.1 extends the prescriptive period for delictual claims from one year to two. *See* LA. CIV. CODE ANN. art. 3493.1. But Article 3493.1 has "prospective application only," and its two-year prescriptive period "shall apply to delictual actions arising after the [July 1, 2024] effective date of [Act 423]." TORT ACTIONS, 2024 La. Sess. Law Serv. Act 423 (H.B. 315). Because the alleged facts underlying Parker's negligence claim occurred before July 1, 2024, the former Article 3492 and its one-year prescriptive period apply.

---

[64] *See* ECF No. 1 at 9–10.

[65] "In Louisiana, . . . tort claims are often called 'delictual' claims, and the limitations periods are often called 'prescriptions' or 'prescriptive periods.'" *Franklin v. Regions Bank*, 976 F.3d 443, 447 n.1 (5th Cir. 2020).

Under the former Article 3492, the one-year prescriptive period "commences to run from the day injury or damage is sustained." LA. CIV. CODE ANN. art. 3492. "Damage is considered to have been sustained, within the meaning of [the former Article 3492], only when it has manifested itself with sufficient certainty to support accrual of a cause of action." *Cole v. Celotex Corp.*, 620 So. 2d 1154, 1156 (La. 1993).

Parker's complaints make plain that he "sustained" the "injury or damage" that commenced the one-year prescriptive period "around February 2013."[66] That is when Parker's "near drowning incident"[67] allegedly occurred and when Chet Morrison Contractors allegedly "neglected [his] safety" by "ha[ving] out of service life jackets readily available for use on board the" *Kelly Morrison*.[68] It is also when Parker alleges that he "could not take 10 steps without feeling like [he] was going to collapse on the back deck of the ship"[69] and when Parker alleges that he "should have been exam[in]ed immediately."[70] To be sure, Parker alleges that he "was diagnosed with PTSD" in 2016 "due to the trauma [he] experienced" in February 2013.[71] But Parker's "ignorance or misunderstanding of the probable extent or duration" of his alleged injuries does not "delay the commencement of prescription" because it is evident from the face of Parker's complaints that he first sustained "actionable harm" in February 2013. *Fontenot v. ABC Ins. Co.*, 1995-1707, p. 8 (La. 6/7/96); 674 So. 2d 960, 964.[72]

---

[66] ECF No. 1 at 9; *see also* ECF No. 8 at 1.
[67] ECF No. 1 at 12.
[68] *Id.* at 10.
[69] *Id.* at 12; *see also* ECF No. 8 at 5.
[70] ECF No. 1 at 12.; *see also* ECF No. 8 at 5.
[71] ECF No. 1 at 12.; *see also* ECF No. 8 at 5.
[72] Even if Parker's 2016 PTSD diagnosis were the prescription-triggering event, his negligence claim would still be untimely because he waited until 2023 to sue.

Accordingly, because Parker's complaints make plain that Parker first "sustained" the relevant "injury or damage" in February 2013, LA. CIV. CODE ANN. art. 3492, the one-year prescriptive period began to run in February 2013. And because Parker waited over ten years—until September 2023—to sue, Parker's negligence claim is time barred unless his complaints raise a basis for tolling.

Parker's complaints do not raise a basis for tolling the prescriptive period on his negligence claim. "Under Louisiana law, there is a firmly rooted equitable-tolling doctrine known as *contra non valentem agree non currit praescriptio*, which means '[n]o prescription runs against a person unable to bring an action.'" *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d 384, 390 (5th Cir. 2021) (quoting *R.J. Reynolds Tobacco Co. v. Hudson*, 314 F.2d 776, 786 (5th Cir. 1963)). "The doctrine tolls prescription only in these four 'exceptional circumstances': (1) where there was some legal cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action; (2) where there was some condition or matter coupled with the contract or connected with the proceedings which prevented the plaintiff from availing himself of his cause of action; (3) where the defendant has done some act effectually to prevent the plaintiff from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.'" *Id.* (quoting *Morgan v. Entergy New Orleans*, 2016-1250, p. 5 (La. App. 4th Cir. 12/6/17); 234 So. 3d 113, 116, 120). Parker's complaints do not implicate any of those circumstances.

14

The result would be the same if Article 3493.1 applied. The *contra non valentem* analysis would be the same because *contra non valentem* is a "jurisprudential doctrine," *Lomont v. Bennett*, 2014-2483, p. 24 (La. 6/30/15); 172 So. 3d 620, 637, and nothing in the text of Article 3493.1 purports to preclude or modify its application. *See* LA. CIV. CODE ANN. art. 3493.1. The commencement-of-prescription analysis would also be the same. Under both Article 3493.1 and the former Article 3492, prescription "commences to run from the day injury or damage is sustained." *Compare* LA. CIV. CODE ANN. art. 3493.1 *with* LA. CIV. CODE ANN. art. 3492 (repealed July 1, 2024). So, if Article 3493.1 applied, its two-year prescriptive period would have started to run at the same time that the former Article 3492's one-year prescriptive period started to run—when Parker's alleged "near drowning incident" occurred "around February 2013."[73] The only analytical difference would be the date prescription expired. Under Article 3493.1, prescription would have expired one year later than it did under Article 3492—in February 2015 rather than in February 2014. Because Parker waited until September 2023 to sue, his negligence claim would be untimely even if Article 3493.1's two-year prescriptive period applied.

Parker's counterarguments do not change the Court's analysis or the result. Parker urges the Court not to dismiss his negligence claim because "it would be a great injustice."[74] But Parker does not point to any allegations in his liberally construed complaints that would allow the Court to reasonably infer that (1) his negligence claim accrued within one year (or two years) of his filing this suit, or (2)

---

[73] ECF No. 1 at 11–12.
[74] ECF No. 31 at 3.

that any tolling doctrine applies.[75] Nor does Parker's liberally construed opposition brief—styled a "motion to stay"—contain any facts or arguments that indicate that Parker *could* plead a timely negligence claim if given a third opportunity to do so.[76]

In sum, Parker's complaints confirm that his negligence claim is time-barred under both the former Article 3492 and the new Article 3493.1. And Parker's complaints raise no basis for tolling. The Court therefore grants Defendants' Rule 12(b)(6) motion to dismiss Parker's negligence claim as time-barred.

### b. Section 1983 Claims (Counts 2–4)[77]

Parker's complaints confirm that his Section 1983 claims are untimely, and his complaints raise no basis for tolling. "Congress did not provide a statute of limitations for claims brought under 42 U.S.C. § 1983." *Brown v. Pouncy*, 93 F.4th 331, 332 (5th Cir. 2024). "Because there is no federal statute of limitations for actions brought pursuant to § 1983, federal courts borrow the forum state's general personal injury limitations period." *Bargher v. White*, 928 F.3d 439, 444 (5th Cir. 2019) (first citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007); and then citing *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)). The forum state is Louisiana, and its one-year prescriptive period for delictual actions under the former Article 3492 has been considered the "relevant limitations period" for Section 1983 claims. *Stringer*, 986 F.3d at 509; *see also Brown*, 93 F.4th at 332; *Bargher*, 928 F.3d at 444–45. But as noted above, the Louisiana legislature repealed the former Article 3492 and replaced it with Article

---

[75] *Id.* at 2–3.
[76] *Id.* at 1–10.
[77] *See* ECF No. 1 at 10–11 (count 2: equal protection), 11–12 (count 3: right to medical care), 12 (count 4: cruel and unusual punishment).

3493.1 and a two-year prescriptive period that applies "prospective[ly] . . . to delictual actions arising after" July 1, 2024. TORT ACTIONS, 2024 La. Sess. Law Serv. Act 423 (H.B. 315). Still, because the alleged events underlying Parker's Section 1983 claims occurred before July 1, 2024, the new Article 3493.1 does not apply, and the former Article 3492 remains the "relevant limitations period" for the purpose of analyzing the timeliness of Parker's Section 1983 claims. *Stringer*, 986 F.3d at 509.

"Although state law provides the limitations period for a [S]ection 1983 claim, federal law determines when the claim accrues." *Turnage v. Britton*, 29 F.4th 232, 244 (5th Cir. 2022) (citing *Wallace*, 549 U.S. at 388). Under federal law, a claim accrues, and "[t]he limitations period begins to run[,] when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Stringer*, 986 F.3d at 510 (internal citation and quotation marks omitted). For the limitations period to start to run, "[a] plaintiff need not realize that a legal cause of action exists; [she] need only know the facts that would support a claim." *Id.* (alterations in original) (internal citation and quotation marks omitted).

Each of Parker's three Section 1983 claims accrued in or around February 2013—over a decade before Parker brought this suit in September 2023.

***Equal Protection.*** Parker's equal-protection-based Section 1983 claim accrued when his "near drowning incident" occurred—"around February 2013."[78] The factual basis for this claim is Chet Morrison Contractors' alleged failure to offer Parker the "option" of being picked up from the oil rig by a helicopter in connection

---

[78] ECF No. 1 at 10–12.

with the "near drowning incident" occurring "around February 2013."[79] Parker had enough information to know he was not "given the helicopter option" offered to the other two divers on the oil rig "[w]hen [he] made it back to the ship" on the same day that the "near drowning incident" occurred.[80] Thus, because Parker "ha[d] sufficient information to know that he ha[d] been injured" in February 2013, *id.* (internal citation and quotation marks omitted), his equal-protection-based Section 1983 claim accrued "around February 2013," and the limitations period began to run then.

***Right to Medical Care.*** The limitations period on Parker's Section 1983 right-to-medical-care claim also began to run "around February 2013." The factual basis for that claim is Chet Morrison Contractors' alleged failure to ensure that Parker was "exam[in]ed immediately" after the "near drowning incident" occurring "around February 2013."[81] Parker had enough information to know that he was not "exam[in]ed immediately" after the "near drowning incident" on the same day that the "near drowning incident occurred."[82] Accordingly, because Parker "ha[d] sufficient information to know that he ha[d] been injured" in February 2013, *id.* (internal citation and quotation marks omitted), Parker's right-to-medical-care claim accrued "around February 2013," and the limitations period began to run then.

---

[79] *Id.* at 11–12.
[80] *Id.* at 11.
[81] *Id.* at 11–12.
[82] *Id.*

*Cruel and Unusual Punishment.* Parker's cruel-and-unusual-punishment claim accrued "about a week and [a half] after" the February 2013 incident.[83] The basis for this claim is Chet Morrison Contractors' alleged failure to invite Parker to a "safety meeting" and "cookout."[84] Parker allegedly learned that he had not been invited to the "safety meeting" and "cookout" "about a week and [a half] after" the February 2013 incident.[85] Accordingly, because Parker "ha[d] sufficient information to know that he ha[d] been injured" in or around February 2013, *id.* (internal citation and quotation marks omitted), Parker's cruel-and-unusual-punishment claim accrued in or around February 2013, and the limitations period began to run then.

Because each of Parker's Section 1983 claims accrued in or around February 2013, and Parker waited until September 2023 to sue, Parker's Section 1983 claims are time-barred unless a tolling doctrine applies. None does. "The forum state's applicable tolling provisions are given full effect" in the Court's analysis. *Bargher*, 928 F.3d at 444 (citing *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 421 (5th Cir. 2016)). As noted above, Louisiana law allows equitable tolling under the doctrine of *contra non valentem*, but that doctrine applies "only in . . . four 'exceptional circumstances.'" *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d at 390 (quoting *Morgan*, 234 So. 3d at 116, 120). Parker's complaints do not implicate any of those circumstances.

---

[83] *Id.* at 12.
[84] *Id.*
[85] *Id.*

Parker's counterarguments do not change the Court's analysis or the result. Parker does not point to any allegations in his liberally construed complaints that would allow the Court to reasonably infer that (1) his Section 1983 claims accrued within one year of his filing this suit, or (2) that any tolling doctrine applies.[86] Nor does Parker's liberally construed opposition contain anything indicating that Parker *could* plead timely Section 1983 claims if given a third opportunity to do so.[87]

In sum, Parker's complaints confirm that his Section 1983 claims are untimely, and his complaints raise no basis for tolling.[88] So, the Court grants Defendants' Rule 12(b)(6) motion to dismiss Parker's Section 1983 claims as time-barred.[89]

### c. "Discrimination" (Count 5)[90]

To the extent Parker intends to assert employment-discrimination claims under Title VII, the Court "cannot consider [his] allegations because he failed to exhaust [those] claims." *Chhim*, 836 F.3d at 472. And to the extent Parker intends to assert employment-discrimination claims under Louisiana law, his complaints confirm that any such claim is untimely, and his complaints raise no basis for tolling.

---

[86] ECF No. 31 at 1–10.

[87] *Id.* at 1–10.

[88] The result would be the same even if Article 3493.1 were considered the "relevant limitations period" for Parker's Section 1983 claims. *Stringer*, 986 F.3d at 509. Because Parker sued in September 2023—over a decade after each of his Section 1983 claims accrued—Parker's Section 1983 claims would be untimely even if Article 3493.1's two-year prescriptive period governed.

[89] Although the Court liberally construes Parker's complaints to assert claims under Section 1983, and not under 42 U.S.C. § 1981, Defendants suspect Parker "may be attempting to allege claims" under Section 1981. ECF No. 19-1 at 7. If Parker intends to assert claims under Section 1981, those claims are time-barred. Section 1981 "bars race discrimination in contracting," *Perry*, 990 F.3d at 931 (emphasis deleted), and is subject to a four-year limitations period under 28 U.S.C. § 1658, *see Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). Any Section 1981 discrimination claim would have accrued, at the latest, when Parker quit working for Chet Morrison Contractors in 2015. Because Parker waited until September 2023 to sue, any Section 1981 claim he intends to assert is time-barred.

[90] ECF No. 1 at 13–15.

20

*Title VII.* Parker's liberally construed complaints confirm that he failed to exhaust any Title VII claims he intends to assert. "Title VII . . . provides for private causes of action arising out of employment discrimination and gives federal courts subject matter jurisdiction to resolve such disputes." *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 303 (5th Cir. 2018), *aff'd sub nom. Fort Bend Cnty. v. Davis*, 587 U.S. 541 (2019). "Before suing, a plaintiff must exhaust administrative remedies by filing a charge with the EEOC within 180 days of the discriminatory action." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) (citing *Davis*, 893 F.3d at 303); *see* 42 U.S.C. § 2000e-5(e)(1). "[A] plaintiff must file a timely charge with the EEOC and then receive a notice of the right to sue." *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002)). "Administrative exhaustion is not a jurisdictional requirement, but neither is it merely a procedural gotcha issue." *Id.* (internal citations and quotation marks omitted). "Instead, administrative exhaustion is a mainstay of proper enforcement of Title VII remedies"; it "exists to facilitate the EEOC's investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws." *Id.* (alterations omitted) (internal citations and quotation marks omitted).  Courts "will not consider claims that were not asserted before the EEOC . . . ." *Chhim*, 836 F.3d at 472.

Here, Parker's liberally construed complaints do not mention any EEOC charge or any other grievance that Parker filed against Chet Morrison Contractors at any point, let alone within 180 days after he "quit"[91] working for Chet Morrison

---

[91] ECF No. 1 at 8.

Contractors in 2015. Accordingly, because Parker's liberally construed complaints contain no facts allowing the Court to draw the reasonable inference that Parker timely filed a charge of discrimination with the EEOC, Parker failed to exhaust any Title VII claims he intends to assert based on his employment by Chet Morrison Contractors. The Court therefore grants Defendants' Rule 12(b)(6) motion to dismiss any Title VII claims Parker intends to assert. *Cf. id.* (affirming Rule 12(b)(6) dismissal of Title VII claims on administrative-exhaustion grounds because the *pro se* plaintiff "fail[ed] to mention any grievances" that reached his retaliation claims).

**Louisiana Law.** Parker's liberally construed complaints confirm that any Louisiana-law employment-discrimination claims he intends to assert are time-barred, and no tolling doctrine applies. The Louisiana Employment Discrimination Law, LA. STAT. ANN. §§ 23:301–370 ("LEDL"), forbids racial discrimination in employment. *See generally* LA. STAT. ANN. § 23:332(A). "Discrimination claims brought under the LEDL are subject to a one-year prescriptive period." *Bias v. Haley*, 2023-0281, p. 10 (La. App. 1st Cir. 11/3/23); 383 So. 3d 175, 185 (citing LA. STAT. ANN. § 23:303(D)). That one-year prescriptive period starts to run "at the earlier of the date the employee is informed of his termination or his actual separation from employment." *Id.* (internal citation and quotation marks omitted).

Here, the one-year LEDL prescriptive period started to run in 2015, when Parker alleges that he "quit" working for Chet Morrison Contractors.[92] Because Parker waited until September 2023 to sue, any LEDL claims Parker intends to

---

[92] *Id.*

assert are untimely unless a tolling doctrine applies. None does. As noted above, *contra non valentem* tolls the prescriptive period  "only in . . . four 'exceptional circumstances,'" *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d at 390 (quoting *Morgan*, 234 So. 3d at 116, 120), none of which applies here. In sum, Parker's complaints confirm that any LEDL claims he intends to assert are untimely, and his complaints raise no basis for tolling. The Court therefore grants Defendants' Rule 12(b)(6) motion to dismiss any LEDL claims Parker intends to assert.

Parker's counterarguments do not change the analysis or the result. Parker does not point to any allegations in his liberally construed complaints that would allow the Court to reasonably infer (1) that he administratively exhausted his Title VII claim; (2) that any LEDL claims accrued within one year of his filing this suit; or (3) that any tolling doctrine applies.[93] Nor does Parker's liberally construed opposition contain any facts or arguments indicating that Parker *could* plead timely LEDL claims or properly exhausted Title VII claims if given a third chance to do so.[94]

### d.  Jones Act and Unseaworthiness Claims (Counts 6–7)[95]

Parker's liberally construed complaints confirm that his Jones Act and unseaworthiness claims are untimely, and his complaints raise no basis for tolling the limitations period on them. "The statute of limitations for maritime torts is governed by 46 U.S.C. § 30106 . . . ." *Pretus v. Diamond Offshore Drilling, Inc.*, 571 F.3d 478, 481 (5th Cir. 2009). "Except as otherwise provided by law, a civil action for

---

[93] ECF No. 31 at 1–10.
[94] *Id.* at 1–10.
[95] ECF No. 8 at 1–6 (Jones Act negligence), 6–7 (unseaworthiness).

damages for personal injury or death arising out of a maritime tort must be brought within 3 years after the cause of action arose." 46 U.S.C. § 30106 (formerly codified as 46 U.S.C. § 763a). That three-year limitations period applies to unseaworthiness claims. *See Cooper v. Diamond M Co.*, 799 F.2d 176, 178 (5th Cir. 1986) (applying 46 U.S.C. § 763a). The Jones Act limitations period is also three years. *See Pretus*, 571 F.3d at 481. "A cause of action under the Jones Act and general maritime law accrues when a plaintiff has had a reasonable opportunity to discover the injury, its cause, and the link between the two." *Id.* (internal citations and quotation marks omitted).

Here, Parker's Jones Act and unseaworthiness claims accrued, at the very latest, in 2016. The factual basis for Parker's Jones Act claim is essentially the same as the factual basis for his ordinary negligence claim: Both claims arose from the "near drowning incident" that allegedly occurred "around February 2013."[96] The events underlying Parker's unseaworthiness claim also occurred "around February 2013," when Parker alleges that the *Kelly Morrison* "attempted 3 times and failed all 3 times to safety get close enough to the Kinder Morgan oil rig to do a person[n]el transfer."[97] To be sure, in the "Supporting Facts" section for both claims, Parker alleges that he "was diagnosed with PTSD" in 2016 "due to the trauma [he] experienced in this near death event while working for Chet Morrison Contractors, LLC."[98] But even if the Court assumes that Parker did not have "a reasonable opportunity to discover the injury, its cause, and the link between the two," *id.*

---

[96] ECF No. 8 at 1–5.
[97] *Id.* at 8.
[98] *Id.* at 5, 6.

24

(internal citations and quotation marks omitted), until his PTSD diagnosis in 2016, Parker's Jones Act and unseaworthiness claims still accrued—at the latest—in 2016. Because Parker sued in September 2023, Parker's Jones Act and unseaworthiness claims are time-barred unless his complaints raise a basis for tolling.

Parker's complaints raise no basis for tolling. "Given the policies favoring limitations period, federal courts have typically extended equitable relief only sparingly." *Wilson v. Zapata Off-Shore Co.*, 939 F.3d 260, 267 (5th Cir. 1991). The Fifth Circuit has suggested that the Jones Act limitations period may be equitably tolled "in cases where the claimant has actively pursued judicial remedies by filing a timely but defective pleading, or where the claimant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.* (internal citations omitted). Parker's complaints do not implicate any of those circumstances.

Parker's counterarguments do not change the analysis or result. Parker does not point to any allegations in his liberally construed complaints that would allow a reasonable inference that (1) any Jones Act or unseaworthiness claims accrued within three years of his filing this suit; or (2) any tolling doctrine applies.[99] Nor does Parker's liberally construed opposition contain anything indicating that Parker *could* plead timely Jones Act or unseaworthiness claims if given another chance to do so.[100]

In sum, Parker's complaints confirm that his Jones Act and unseaworthiness claims are untimely, and his complaints raise no basis for tolling. The Court grants Defendants' Rule 12(b)(6) motion to dismiss those claims as time-barred.

---

[99] ECF No. 31 at 1–10.
[100] *Id.* at 1–10.

### 2.   "Under Color of Law"

Next, Defendants contend that Parker's Section 1983 claims should be dismissed for the independent reason that Parker failed to plead facts plausibly establishing that they—private actors—acted "under color of law." The Court agrees.

"Under 42 U.S.C. § 1983, one may sue '[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State' violates his or her constitutional rights." *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (quoting 42 U.S.C. § 1983). "Based on this language, the Supreme Court has explained that '[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that *the alleged deprivation was committed by a person acting under color of state law*.'" *Id.* (emphasis added) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). "Private individuals generally are not considered to act under color of law, but private action may be deemed state action when the defendant's conduct is fairly attributable to the State." *Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017) (internal citations and quotation marks omitted). "To establish fair attribution, the plaintiff must show: (1) that the deprivation was caused by the exercise of some right of privilege created by the state or by a rule of conduct imposed by the state, or by a person for whom the state is responsible, and (2) that the party charged with the deprivation may fairly be said to be a state actor." *Id.* (internal citation and quotation marks omitted).

Here, Parker's liberally construed complaints contain no facts that plausibly establish that either Defendant acted under color of state law. There are no factual allegations in those complaints that allow the Court to reasonably infer that any alleged constitutional violation underlying Parker's Section 1983 claims was "caused by the exercise of some right of privilege created by the state, or by a person for whom the state is responsible." *Id.* (internal citation and quotation marks omitted). Nor are there any factual allegations in Parker's liberally construed complaints that allow the Court to reasonably infer that Chet Morrison Contractors or Morrison Energy "may fairly be said to be a state actor." *Id.* (internal citation and quotation marks omitted).

Parker's counterarguments do not change the analysis or result. Although Parker acknowledges Defendants' "under color of law" argument,[101] Parker does not point to any allegations in his liberally construed complaints that would allow a reasonable inference (1) that any constitutional violation underlying his Section 1983 claims was "caused by the exercise of some right of privilege created by the state, or by a person for whom the state is responsible"; or (2) that Chet Morrison Contractors or Morrison Energy "may fairly be said to be a state actor."[102] *Id.* (internal citation and quotation marks omitted). Nor does Parker's liberally construed opposition brief contain any facts or arguments indicating that Parker *could* plead a Section 1983 claim satisfying the "under color of law" element as to either Defendant.[103]

---

[101] *See* ECF No. 31 at 3.
[102] ECF No. 31 at 1–10.
[103] *Id.* at 1–10.

27

Accordingly, because Parker fails to plead facts plausibly establishing the "under color of law" element of his Section 1983 claims, Parker fails to state any Section 1983 claims. The Court therefore grants Defendants' Rule 12(b)(6) motion to dismiss Parker's Section 1983 claims for this independent reason.

### 3.     No Alleged Misconduct by Morrison Energy

Finally, Defendants contend that Morrison Energy should be dismissed from this case for the independent reason that Parker alleges no claims against it and no misconduct by it. The Court agrees. The only allegation related to Morrison Energy, specifically, is that Morrison Energy "sponsored" unidentified Chet Morrison Contractors employees to become "ADC Surface Supplied Air Diver Supervisor[s]."[104] Parker's complaints do not otherwise reference Morrison Energy or connect Morrison Energy to the alleged facts giving rise to any of his claims. Because Parker does not allege that Morrison Energy did anything wrong, the Court cannot "draw the reasonable inference that [Morrison Energy] is liable" for any of "the misconduct alleged" in Parker's complaints. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). So, to the extent that Parker intended to assert any claims against Morrison Energy, those claims are dismissed with prejudice under Rule 12(b)(6).

Parker's counterarguments do not change the analysis or result. Although Parker acknowledges Defendants' argument,[105] Parker does not point to any allegations in his liberally construed complaints that would allow the Court to draw the reasonable inference that Morrison Energy committed any misconduct for which

---

[104] *Id.* at 6.
[105] *See* ECF No. 31 at 6.

it could be liable under any theory Parker intends to advance.[106] Nor does Parker's liberally construed opposition brief contain any facts or arguments indicating that Parker *could* plead any plausible claim against Morrison Energy.[107]

*     *     *

To sum up: Parker fails to state any claims against any Defendant. His liberally construed complaints confirm the untimeliness of any claims he intends to assert for negligence, violations of Section 1983, violations of the LEDL, violations of the Jones Act, and unseaworthiness. And those complaints raise no basis for tolling. Parker's complaints also confirm that Parker failed to administratively exhaust any Title VII discrimination claims he intends to bring. Independently, Parker fails to state any Section 1983 claims against any Defendant because his liberally construed complaints contain no factual allegations allowing the Court to reasonably infer that any Defendant acted under color of state law. And finally, Parker fails to state any claims against Morrison Energy for the independent reason that he alleges no facts allowing the Court to reasonably infer that Morrison Energy did anything wrong.

### B.    "Motion to Add Counts"

Finally, Parker moves the Court to allow him to add two counts—proposed counts eight and nine—to his original and supplemental complaints, and Parker asks the Court to "recogniz[e]" those two counts as "unlawful acts."[108]

---

[106] *Id.* at 1–10.
[107] *Id.* at 1–10.
[108] ECF No. 32 at 1.

29

For proposed count eight, Parker alleges that Chet Morrison Contractors "exposed [him] to criminal activity" when, despite knowing that he was a felon, it sent him offshore "to do a job" requiring him to "work[] with and around C4 explosives."[109] Parker alleges that this "unlawful act" occurred "around 2013."[110]

For proposed count nine, Parker alleges that Superintendent John Phillips of Chet Morrison Contractors "tried to murder"[111] Parker when Phillips allegedly ordered Parker to swim from the oil rig to the *Kelly Morrison* during the "near drowning incident"[112] "in around February 2013."[113] Parker also alleges that he told a lawyer about his "near death experience" in 2015 and again in 2022, but the lawyer said he could not help with Parker's case.[114] Parker alleges that a letter from the lawyer's office identified another lawyer at the firm with a middle initial "M," which Parker thinks "might stand for Morrison[,] . . . the last name of some of the family members who own and work for [Chet Morrison Contractors]."[115] Parker's suspicion about a potential connection between that lawyer and Chet Morrison Contractors "leads [him] to further believe there was a conspiracy against [his] civil rights."[116]

The Court liberally construes Parker's "motion to add counts" as a motion for leave to file a third supplemental and amending complaint. "Generally, . . . a *pro se* litigant should be offered an opportunity to amend his complaint before it is

---

[109] *Id.* at 2–3.
[110] *Id.*
[111] *Id.* at 3.
[112] ECF No. 1 at 12.
[113] *Id.* at 9.
[114] ECF No. 32 at 4.
[115] *Id.* at 5.
[116] *Id.*

dismissed." *Brewster*, 587 F.3d at 767–68 (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). Parker has already amended[117] and received leave[118] to file evidence in support of his claims. To be sure, "leave to amend should be liberally granted" if a *pro se* plaintiff "might be able to state a claim based on the underlying facts and circumstances." *Hernandez v. W. Tex. Treasures Est. Sales, L.L.C.*, 79 F.4th 464, 468 (5th Cir. 2023) (citing *Brewster*, 587 F.3d at 767–68). But a district court need not "grant a futile motion to amend, for instance, when 'the plaintiff has already pleaded his best case.'" *Id.* (quoting *Brewster*, 587 F.3d at 768).

Parker "has already pleaded his best case," and further amendment would be futile. *Brewster*, 587 F.3d at 768. "While a precise definition of a plaintiff's 'best case' is elusive, [the Fifth Circuit] often assumes a plaintiff asserts [his] best case after the plaintiff 'is apprised of the insufficiency' of the complaint." *Dark v. Potter*, 293 F. App'x 254, 257 (5th Cir. 2008) (per curiam) (quoting *Morrison v. City of Baton Rouge*, 761 F.2d 242, 246 (5th Cir. 1985)). Here, Defendants' Rule 12(b)(6) motion "apprised" Parker "of the insufficiency" of Parker's complaints. *Id.* (internal citation and quotation marks omitted). Since Defendants filed that motion—placing Parker on notice of the complaint's deficiencies—Parker has made no fewer than 12 filings;[119] the Court has considered the facts and arguments raised in each of them. Nothing in any of Parker's post-Rule 12(b)(6) filings cures the deficiencies outlined in

---

[117] ECF No. 8.

[118] ECF No. 11.

[119] ECF No. 20 (second motion to appoint counsel); ECF No. 22 (original motion for summary judgment); ECF No. 23 (original motion to stay); ECF No. 24 (supplemental motion for summary judgment); ECF Nos. 27, 28, 29, 30, 34 (letters to the court); ECF No. 31 (second motion to stay); ECF No. 32 ("motion to add counts"); and ECF No. 33 ("motion for protection").

Defendants' Rule 12(b)(6) motion or otherwise suggests that Parker *could* amend his complaints to cure any of those deficiencies if given yet another opportunity to do so.

As for the "motion to add counts," nothing in Parker's proposed count eight or proposed count nine cures any of the deficiencies outlined above or otherwise suggests that Parker could plead any plausible claims if given another opportunity to do so. In particular, nothing in proposed count eight or proposed count nine suggests that Parker could plead facts plausibly establishing that (1) any of his claims was timely filed; (2) any limitations period was tolled under any theory; (3) any Title VII claim was properly exhausted; (4) any Defendant acted "under color of law"; or (5) Morrison Energy engaged in misconduct for which it may be liable under any asserted theory.

What is more, Parker "gives no indication that he did not plead his best case in his" original and supplemental complaints. *Pitts v. Waffle House, Inc.*, No. 23-60436, 2024 WL 1904556, at *3 (5th Cir. May 1, 2024) (per curiam). Nor does Parker "explain what facts he would . . . add[]" if the Court permitted him to file another amended complaint or "how he would . . . overcome" any of the many deficiencies identified in this order and reasons. *Id.* Parker already has "provided detailed facts supporting his claims," and he has "already had a considerable opportunity to present his best case." *Weeks v. Collier*, No. 22-10126, 2023 WL 7703823, at *8 (5th Cir. Nov. 15, 2023) (per curiam). Indeed, Parker "has presented [his] arguments several times" in both his original and supplemental complaints, as well as his "motion to stay." *Dougherty v. United States Dep't of Homeland Sec.*, No. 22-40665, 2023 WL 6123106, at *6 (5th Cir. Sept. 19, 2023) (per curiam). As noted above, Parker has had an ample

opportunity—across no fewer than 12 filings—to attempt to cure the many deficiencies outlined in Defendants' Rule 12(b)(6) motion *after* that motion "apprised" Parker "of the insufficiency" of his complaints. *Dark*, 293 F. App'x at 257 (internal quotation marks omitted). "Despite these opportunities, [Parker] remains unable to state plausible" claims against Defendants. *Dougherty*, 2023 WL 6123106, at *6.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Rule 12(b)(6) motion[120] is **GRANTED**. Because Parker has already pleaded his best case, and further amendment would be futile, Parker's claims are **DISMISSED** with prejudice. A final judgment will follow in accordance with Federal Rule of Civil Procedure 58.

**IT IS FURTHER ORDERED** that Parker's motion[121] to add counts is **DENIED**.

New Orleans, Louisiana, this 28th day of August, 2024.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[120] ECF No. 19.
[121] ECF No. 32.

33